UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| H.C. RUPARELIA, *et al.*, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 04-CV-0372-B |
| | § | |
| HAROLD O'CONNOR, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM ORDER

Before the Court is an appeal by H.C. Ruparelia ("Ruparelia") and Innovative Asset Group,

Inc. ("Innovative") (collectively, "Ruparelia" or "the Ruparelia parties") from two separate final

judgments of the bankruptcy court, dated January 13, 2004 and February 24, 2004.  Having

conducted plenary review of the bankruptcy court's judgments, the Court AFFIRMS each judgment

for the reasons discussed below.

## I.  BACKGROUND[1]

This is a consolidated appeal of two cases, 3: 04-CV-0372-B and 3: 04-CV-0384-B.  The

original parties to the consolidated appeal were the Ruparelia parties, Harold E. O'Connor

("O'Connor"), the Probate Estate of Marie O'Connor, and Daniel Sherman, the Chapter 7 Trustee

(the "Trustee").  On September 12, 2005, the Ruparelia parties and the Trustee and Probate Estate

entered into a settlement agreement, and the only remaining issues on appeal are the disputes

pertaining to O'Connor individually.

---

[1]  The facts are derived from the parties' pleadings and the evidence in the record.  Unless
characterized as a contention of one of the parties, the facts are undisputed.

The bankruptcy court entered its final judgment on Ruparelia's claims on January 13, 2004, granting the Ruparelia parties' motion for damages against O'Connor in the amount of $7,200, together with $1,200 in attorneys' fees plus 1.20% annual interest, but finding against Ruparelia on the remaining claims other than to award Ruparelia a general unsecured claim of $6,000.00 in the bankruptcy case in a pro-rata division with the other general unsecured creditors pursuant to Bankruptcy Code section 502(a). (January 13, 2004 Judgment). Then, on February 24, 2004, the Court entered a final judgment on O'Connor's motion for attorney's fees, awarding him fees for those claims he prevailed upon as a defendant.

## I. BACKGROUND

Essentially, this case involves a dispute arising from a real estate development transaction in St. Croix sixteen years ago, in 1989, in which Ruparelia was the developer and Innovative was formed as a sub-chapter S corporation in order to facilitate sales. (R. Vol. 12, p. 2640-42). Bruce Wilson ("Wilson"), a St. Croix real estate agent, allegedly represented the O'Connors in the sale of roughly 30 acres of land in St. Croix. (R. Vol. 12, p. 2667). Ruparelia and the O'Connors entered into an "Offer to Purchase" ("OTP") drafted by Wilson on September 11, 1999). (R. Vol. 8, p. 1688, 1694, R. Vol. 6, p. 1196; App. No. 5). The O'Connors' attorney, Stacy White ("White") drafted a related mortgage document. (R. Vol. 8, P. 1711-12). The parties closed on the first fifteen acres of the land (the "first tract") on March 30, 2000 (R. Vol. 6, pp. 1199, 1203, 1206) and Ruparelia executed the mortgage as to the first tract of land and signed a promissory note for the balance due as to that tract. (R. Vol. 6, pp. 1203, 1206; App. No. 6). He began to immediately subdivide and try to sell plots under contracts for deed. (R. Vol. 8, pp. 1699-1703; R. Vol. 6, p. 1196; App. No. 4). Ruparelia's general business practice was to enter into contracts for deed for

-2-

one-quarter acre plots.  (R. Vol.  8, p. 1700).  He would then seek coinciding partial lien releases from the O'Connors, for which he paid "lot release fee[s]."  (R. Vol.  8, p. 1700).

A dispute arose between the parties, and the O'Connors filed a lawsuit against Ruparelia in the Virgin Islands, claiming that he was in default of the mortgage.  (R.  Vol.  6, p.  1225). Ultimately, however, they entered into a stipulation of dismissal when funds paid into the court's registry by Ruparelia were released to them.  (R. Vol. 6, p. 1235).  According to Ruparelia, after Carlos Cintron ("Cintron") closed on one of the lots sold to him by Ruparelia and began planting trees, O'Connor ordered him off the land and claimed ownership.  (R.  Vol. 9, p.  1850-52, 1876, 1939-40).  Ruparelia claims that this interaction set off a series of events which led to defamation of him as a businessperson.  (R. Vol. 12, p. 2697).   Ruparelia allegedly was forced to post a letter of credit to protect Cintron.  (R.  Vol. 12, p.  2701).   Then the O'Connors' new attorney, Hunter Logan ("Logan") drafted two separate letters to Cintron's attorney on April 25, 200 and May 4, 2000 (R.  Vol.  10, p.  2090, 2093), which allegedly "caused additional embarrassment and humiliation for Ruparelia."  (Appellant Brief at 12).

As it turned out, the second tract did not contain a full fifteen acres, but rather contained slightly less than fourteen acres, and because of a disagreement regarding the purchase price for the second tract a disagreement over Ruparelia's lot release fee obligations, they did not close on that tract of land (the "second tract").  (R. Vol. 12, p. 2675; R. Vol. 1, p. 25-26; R. Vol. 13, p. 2843; R. Vol. 11, p. 2424; R. Vol. 12, pp. 2844-45). .

On September 17, 1999, the O'Connors filed for bankruptcy under Chapter 11.  That case was later converted to a Chapter 7 bankruptcy, and O'Connor ultimately waived his right to discharge.  (R. Vol. 1, p. 88).  Ruparelia had allegedly paid $40,000 in earnest money for purchase

of the second tract of land which never closed, and after the bankruptcy filing, Ruparelia requested

that the Trustee release the estate's interest in the $40,000, but the Trustee refused. (R. Vol. 12,

p. 2753).

Ruparelia subsequently filed claims against the O'Connors and the Trustee in August 2001

and May 2003 and made the following arguments:

(1)    the O'Connors' refusal to close constituted breach of contract;
(2)    the O'Connors breached the contract by failing to provide timely releases of liens;
(3)    the O'Connors fraudulently induced Ruparelia to enter into the contract;
(3)    the O'Connors tortiously interfered with Ruparelia's efforts to sell the land he had purchased under the contract;
(4)    the O'Connors defamed Ruparelia and trespassed on land he owned;
(5)    the Trustee wrongly refused to ratify the contract and return Ruparelia's $40,000
(6)    Ruparelia was entitled to attorneys' fees.

(Appellant Brief at 14; R. Vol. 2, pp. 175, 221).

Bankruptcy Judge Felsenthal held multiple hearings on Ruparelia's claims on August 26, 27,

and October 8, 2003. The bankruptcy court then entered two memorandum opinions, November

10, 2003 and December 30, 2003 and entered its final judgment on Ruparelia's claims on January

13, 2004. (Jan. 13, 2004 Judgment). In that judgment, the bankruptcy court granted partial relief

and attorneys' fees to the Ruparelia parties. (*Id.*). The bankruptcy court then entered a separate

judgment on February 24, 2004 as to the objecting parties' (which included O'Connor) claim for

attorney's fees. Presently before the Court is the appeal of those judgments by the Ruparelia parties

solely as they relate to O'Connor in his individual capacity.

-4-

## II. ANALYSIS

**A.     Legal Standard.**

Section 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a) endow district courts with jurisdiction over bankruptcy appeals such as the one presently before the Court. A district court reviewing a decision of the bankruptcy court engages in plenary review of the bankruptcy court's judgment, applying the standard of review "generally applied in federal court reviews," and "function[ing] as an appellate court." *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *Matter of Coston*, 991 F.2d 257, 261 n. 3 (5th Cir. 1993) (citations omitted). The district court must not, however, set aside the bankruptcy court's findings of fact unless it is "clearly erroneous," and must give due regard to the opportunity the Bankruptcy Court had to judge the witnesses' credibility. *Webb*, 954 F.2d at 1104; Fed. R. Bankr. P. 8013. Under the law of the Fifth Circuit, although there may be evidence supporting a certain finding of fact, it is clearly erroneous if, after reviewing all of the evidence, the district court "is left with a firm and definite conviction that a mistake has been committed." *Matter of Missionary Baptist Foundation of Am., Inc.*, 712 F.2d 206, 209 (5th Cir. 1983) (citations omitted). The district court applies *de novo* review to mixed questions of law and fact. *Matter of Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir.).

**B.     Issues on Appeal.**

**1.     Breach of Contract – The Bankruptcy Court Did Not Err in Finding Against Ruparelia on His Breach of Contract Claim Against O'Connor for the Second Tract.**

The Ruparelia parties first argue that the bankruptcy court erred in finding against Ruparelia on his breach of contract claim against O'Connor for the second tract of land. In its memorandum order of November 10, 2003, the bankruptcy court analyzed Ruparelia's breach of contract claim and

examined the language in the Offer to Purchase ("OTP"). (Nov. 10, 2003 Order at 3). Noting that

the O'Connors "sold approximately fifteen acres to Ruparelia in the first transaction," the court

found that "the parties never completed the second transaction." (*Id.* at 4-5). In examining the

OTP, the bankruptcy court found that it "did not include essential terms for the second tract," and

that "the parties did not reach a meeting of the minds on the essential terms for the sale of the

second tract," therefore omitting the possibility of "having a binding, enforceable contract for the sale

of the second tract," and causing Ruparelia's claim for breach of contract to fail as a matter of law.

(*Id.* at 4). The Court agrees. The OTP specifically states as follows regarding the second tract:

> **Second 15 acres: Three months after the closing of the First 15 acres, Buyer shall
> begin making eight monthly Earnest monthly deposits of $5,000.00 (Five
> Thousand Dollars 00/100) prior to closing under same terms and conditions as
> the first closing.**

OTP, ¶ 1.

Because the second tract of land did not contain fifteen acres, but rather contained 13.721

acres, the O'Connors and Ruparelia disagreed on the purchase price and the parties "never

negotiated the difference." (Nov. 10, 2004 Order at 7). Moreover, in letters written between the

parties' counsel, each "invoked the ambiguous provision of the consideration for the two tracts" in

the OTP, which contemplated that the sale would be in two 15 acre portions and that the sale price

would be a certain sum, but would equal $23,500.00 per acre. (*Id.*; OTP ¶ 11). Although the OTP

contemplated the possibility that there may not be exactly 30 acres, as the bankruptcy court correctly

surmised, "the purchase price formula works only if there are thirty acres," which there were not.

(*Id.*). The OTP provision regarding the second tract of land was ambiguous. (*Id.* at 8-9). Because

the parties agreed to the purchase price for the first 15 acres of land (the first tract) and left the

purchase price of the second tract of land open to further negotiation, there was no meeting of the minds as to a purchase price for the second tract, and a binding contract was therefore never formed regarding that portion of land. The Court therefore AFFIRMS the bankruptcy court's ruling that Ruparelia's breach of contract claim against O'Connor as to the second tract fails as a matter of law.

> **2.       Defamation – The Bankruptcy Court Did Not Err in Finding Against Ruparelia on His Defamation Claim Against O'Connor.**

Next, Ruparelia argues that the bankruptcy court erred in finding against him on his defamation claim against O'Connor. Under Virgin Island law, "'A statement is defamatory if it tends to so harm the reputation of another that his standing in the community is lowered and it deters third persons from associating or dealing with that person.'" (*Id.* at 22) (citing *Flanders v. Shellseekers, Inc.*, 1998 WL 667782, at *3 (Terr. V.I. Aug. 11, 1998)). In *Flanders*, the court set forth the necessary elements of a defamation claim. *Id.* In order to prevail upon his claim, Ruparelia must prove as follows:

(1)      O'Connor made a false and defamatory statement concerning Ruparelia;
(2)      the statement was an unprivileged communication to a third party;
(3)      O'Connor was at fault amounting to at least negligence in making the statement; and
(4)      the publication of the statement caused harm to Ruparelia.

*Id.*

In defense of Ruparelia's claim, O'Connor may assert truth and/or privilege. *Id.* The Trustee asserted that the allegedly defamatory statement made to Cintron was not that O'Connor owned the property at the time of his encounter with Cintron, but that he owned the property when Cintron entered into the contract with Ruparelia. (Nov. 10, 2003 Order at 25). O'Connor did not testify, and, according to Cintron's testimony, O'Connor's statements were indeed false and the bankruptcy

court accepted that they were false.  (*Id.*).

The bankruptcy court found, however, that the publication of the statement *did not cause any harm* to Ruparelia because (1) Ruparelia did not present evidence showing that he lost any sales of property because of the statement or statements made by O'Connor, (1) Cintron did not terminate the contract and Ruparelia did not return his money and (3) there was no evidence that Ruparelia could not sell any of the first tract lots.  (*Id.* at 27).  Moreover, the letters written by O'Connor's attorney to Ruparelia's attorney were legal opinions, and were not defamatory.  (*Id.* at 29-30) (citing Restatement (Second) of Torts § 566 (1977) ("[a] defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.").  O'Connor's attorney merely based his opinion on the facts involved in the dispute and therefore made no defamatory statements in his communications with any third parties.  Thus, lacking the necessary elements to establish a defamation claim, the Court AFFIRMS the decision of the bankruptcy court to find against Ruparelia on that claim against O'Connor.

### 3.   Tortious Interference – The Bankruptcy Court Did Not Err in Failing to Award Damages Against O'Connor Individually.

Third, the Ruparelia parties claim that the Court erred in failing to award them damages against O'Connor in his individual capacity.  The Ruparelia parties alleged that O'Connor tortiously interfered with their business relations with potential buyers and buyers.  (Nov. 10 Order at 30). However, because a valid claim for tortious interference requires a "third person's failure to perform," the bankruptcy court again reasoned that the Ruparelia parties claims failed as a matter of law because "Ruparelia presented no evidence that O'Connor's statements, alone or as perpetrated by

[his attorney], resulted in any other third party not performing a contract with him." (*Id.*) (citing *Mahogany Run Condo. Ass'n., Inc. v. ICG Realty Mgmt. Corp.*, 1999 WL 112826, at *2 (D.V.I. Feb. 16, 1999) (quoting *Gov't Guarantee Fund v. Hyatt Corp.*, 955 F. Supp. 441, 452 (D.V.I. 1997)). Reviewing the bankruptcy court's factual determinations for clear error, the Court finds none, and therefore AFFIRMS the bankruptcy court's finding against the Ruparelia parties on their tortious interference claims against O'Connor in his individual capacity.

### 4. The Bankruptcy Court Did Not Err in Awarding Attorneys' Fees to O'Connor.

Finally, the Ruparelia parties claim that the bankruptcy court erred in its award of attorney's fees to O'Connor because (1) O'Connor failed to file a fee application, (2) the court lacked jurisdiction to do so, and (3) O'Connor was not a "prevailing party" as the term is defined by the law of the Virgin Islands. (Appeal from Feb. 24, 2004 Order at 2). In a memorandum order dated December 31, 2003, the bankruptcy court issued a ruling on Ruparelia's attorney's fee claim. The Trustee, the debtor (O'Connor), and the probate estate (the "objecting parties") filed their own motion for attorney's fees against the Ruparelia parties on November 26, 2003. (Feb. 24, 2004 Order at 2). The bankruptcy court entered its Final Judgment on the Ruparelia parties' claim on January 13, 2004, but did not address the objecting parties' motion for attorneys fees at that time and instead addressed those claims in a memorandum order on February 24, 2004. (*Id.*).

In its February 24, 2004 Order, the Court reasoned that because a prevailing party may be awarded attorney's fees and reimbursement of expenses at the court's discretion under Virgin Islands' law, O'Connor was entitled to a judgment against the Ruparelia parties in the amount of $7,200.00. (Feb. 24, 2004 Order at 2-5; *Wenner v. Government of V.I.*, 1993 WL 661182, at *2-*3 (D. V.I. Dec.

30, 1993); *Melendez v. Rivera*, 24 V.I. 63 (Terr. Ct. of V.I., Div. of St. Croix 1988).

The Ruparelia parties argue that the bankruptcy court could not issue any attorney's fee award at this time because it had lost jurisdiction after entering its final judgment and because O'Connor did not submit a fee application, as the bankruptcy court had directed Ruparelia to do. (Appeal from Feb. 24, 2004 Order at 2; Feb. 24, 2004 Order at 2). The Court finds that the bankruptcy court did not err in awarding fees in the face of a O'Connor's failure to file a fee application because the bankruptcy court specifically noted that in entering the pretrial order on September 23, 2003, the parties had specifically preserved for resolution the issue of attorney's fees recovery by the objecting parties. (Pretrial Order ¶ III.15; February 24, 2004 Order at 2). The Court also finds that the bankruptcy court had jurisdiction to enter its award of attorneys' fees to O'Connor because the bankruptcy court "had not entered findings of fact and conclusions of law on the objecting parties' [including O'Connor] motions" for fees, and it was required to do so pursuant to Bankruptcy Rules 7052 and 9014. (Feb. 24, 2004 Order; *cf.* Appeal from Feb. 24, 2004 Order at 2).

Finally, the Ruparelia parties argue that the bankruptcy court erred in awarding O'Connor attorney's fees because he was not a "prevailing party" under Virgin Island law since, according to Ruparelia, there cannot be "co-prevailing" parties. (Appeal from Feb. 24, 2004 Order at 2; Appellant's Reply Brief at 6). In analyzing whether O'Connor was a prevailing party, the bankruptcy court correctly stated the standard under Virgin Island law, which is that a prevailing party may be a defendant who defeats claims brought against it. (Feb. 24, 2004 Order at 3) (citing *Thorstenn v. Barnard*, 883 F.2d 217, 218 (3rd Cir. 1989)). Specifically, the bankruptcy court noted that "O'Connor prevailed on Ruparelia's defamation claim, on his trespass claim and on his fraud claim."

(Feb. 24, 2004 Order at 3).  Because this is the correct legal standard, and because O'Connor

prevailed on those claims, the Court AFFIRMS the bankruptcy court's limited award of attorney's

fees to O'Connor.

## III.  CONCLUSION

For the reasons discussed, the bankruptcy court's Order of January 13, 2004 and its Order

of February 24, 2004 are **AFFIRMED**, and the Ruparelia Parties' appeal is **DENIED** in its entirety.

SO ORDERED.
SIGNED October __11th__, 2005


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE